IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN (JACKSON) DIVISION

GWENDOLYN BYRD, ON BEHALF OF
HERSELF AND ALL OF THOSE SIMILARLY SITUATED      PLAINTIFF

VS.                              CIVIL ACTION NO. 3:17-cv-522-TSL-RHW

WELLS FARGO, N.A. D/B/A
WELLS FARGO FINANCIAL BANK;
WINDOWS USA, LLC D/B/A
WINDOWS USA AND ALASKAN
WINDOW SYSTEMS; AND
BIG FOUR COMPANIES, INC.                                    DEFENDANTS

---

**DEFENDANT WELLS FARGO FINANCIAL NATIONAL BANK'S[1]
MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND TO DISMISS
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) or 12(b)(6)**

---

Plaintiff Gwendolyn Byrd signed a Credit Card Agreement with Defendant Wells Fargo Financial National Bank ("Wells Fargo"); in doing so, Byrd specifically acknowledged that she agreed to arbitrate and was bound by the terms of the incorporated Arbitration Agreement. The Arbitration Agreement delegates all threshold questions of arbitrability to the arbitrator. Under the Fifth Circuit's recent decision, *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199 (5th Cir. 2016), the only question for this Court is whether the parties agreed to arbitrate. As shown below, Byrd is bound by her valid written agreement to arbitrate, and this Court should compel arbitration and dismiss all claims against Wells Fargo, or, in the alternative, stay those claims pending arbitration.

---

[1] Plaintiff incorrectly named "Wells Fargo, N.A. d/b/a Wells Fargo Financial Bank" as Defendant. There is no such entity. The contract attached hereto as Exhibit A is between Plaintiff and Wells Fargo Financial National Bank.

{JX272950.1}                               1

**FACTS**

On August 20, 2015, Gwendolyn Byrd contracted with a window company for the manufacture and installation of a new set of windows for her home.[2]  At the same time, Byrd entered into a Credit Card Agreement with Wells Fargo for financing of the window purchase. The first page of the Credit Card Agreement states in bold print:



Ex. A at 1.  Byrd signed the document, thereby acknowledging the existence of an Arbitration Agreement with Wells Fargo and specifically agreeing to be bound by its terms.

The Credit Card Agreement consists of ten pages, and the Arbitration Agreement is found on pages 2 and 4 (with one copy to be given to the applicant for their records) under the distinct heading "ARBITRATION AGREEMENT."  *Id.* at 2.  Below is the entire arbitration agreement:

---

[2] Byrd contends that she was induced into contracting with Windows USA/Alaskan Windows Systems for the purchase and installation of windows.  [1] at 6-9.

{JX272950.1}                                         2

**ARBITRATION AGREEMENT**

**Binding Arbitration.** You and Wells Fargo Financial National Bank (the "Bank"), including the Bank's assignees, agents, employees, officers, directors, shareholders, parent companies, subsidiaries, affiliates, predecessors and successors, agree that if a Dispute (as defined below) arises between you and the Bank, upon demand by either you or the Bank, the Dispute shall be resolved by the following arbitration process. However, the Bank shall not initiate an arbitration to collect a consumer debt, but reserves the right to arbitrate all other disputes with its consumer customers. A "Dispute" is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to your Credit Card Account ("Account") or related services. It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law and equitable claims. A Dispute also includes any disagreements about the meaning or application of this Arbitration Agreement. This Arbitration Agreement shall survive the payment or closure of your Account. **You understand and agree that you and the Bank are waiving the right to a jury trial or trial before a judge in a public court.** As the sole exception to this Arbitration Agreement, you and the Bank retain the right to pursue in small claims court any Dispute that is within that court's jurisdiction. If either you or the Bank fails to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by the other in compelling arbitration.

**Arbitration Procedure; Severability.** Either you or the Bank may submit a Dispute to binding arbitration at any time notwithstanding that a lawsuit or other proceeding has been previously commenced. **Neither you nor the Bank shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in a private attorney general capacity.** Each arbitration, including the selection of the arbitrator(s) shall be administered by the American Arbitration Association (AAA), or such other administrator as you and the Bank may mutually agree to (the AAA or such other mutually agreeable administrator to be referred to hereinafter as the "Arbitration Administrator"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules"). To the extent that there is any variance between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement shall control. Arbitrator(s) must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the Dispute. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. You and the Bank (the "Parties") agree that in this relationship: (1) The Parties are participating in transactions involving interstate commerce; and (2) This Arbitration Agreement and any resulting arbitration are governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that Act is inapplicable, unenforceable or invalid, the laws of the state of Nevada. If any of the provisions of this Arbitration Agreement dealing with class action, class arbitration, private attorney general action, other representative action, joinder, or consolidation is found to be illegal or unenforceable, that invalid provision shall not be severable and this entire Arbitration Agreement shall be unenforceable.

**Rights Preserved.** This Arbitration Agreement does not prohibit the Parties from exercising any lawful rights or using other available remedies to preserve, foreclose or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment or the appointment of a receiver by a court of competent jurisdiction. Any statute of limitations applicable to any Dispute applies to any arbitration between the Parties. The provisions of this Arbitration Agreement shall survive termination, amendment or expiration of the Account or any other relationship between you and the Bank.

**Fees and Expenses of Arbitration.** Arbitration fees shall be determined by the rules or procedures of the Arbitration Administrator, unless limited by applicable law. Please check with the Arbitration Administrator to determine the fees applicable to any arbitration you may file. If the applicable law of the state in which you opened your Account limits the amount of fees and expenses to be paid by you, then no allocation of fees and expenses to you shall exceed this limitation. Unless inconsistent with applicable law, each of us shall bear the expense of our own attorney, expert and witness fees, regardless of which of us prevails in the arbitration.

*Id.*

Under the terms of this Arbitration Agreement, Byrd agreed to arbitrate "any unresolved disagreement" between herself and Wells Fargo, including "any disagreements about the meaning or application of this Arbitration Agreement." *Id.* The Arbitration Agreement also incorporates the Commercial Arbitration Rules and Supplemental Procedures for Consumer Related Disputes of the American Arbitration Association ("AAA"). Rule 7 of the Commercial Arbitration Rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the

arbitration agreement or to the arbitrability of any claim or counterclaim."[3]  Rule 14 of the AAA's Consumer Arbitration Rules is identical.[4]

In breach of the Arbitration Agreement, Byrd brought this lawsuit against Wells Fargo on June 29, 2017.  As discussed below, Byrd should be compelled to arbitration, and her claims against Wells Fargo should be dismissed.

## ARGUMENT

**A.     Byrd should be compelled to arbitrate.**

Ordinarily, in ruling on a motion to compel arbitration under Section 4 of the Federal Arbitration Act, a court considers two issues: (1) whether the parties formed an agreement to arbitrate; and (2) whether the parties' dispute falls within the arbitration agreement's scope.  *Kubala*, 830 F.3d at 201 (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).  If, however, the party seeking to compel arbitration points to a delegation clause in the arbitration agreement, then the court's analysis changes.  *Id.* at 201.  The questions then become (1) "whether the parties entered into a valid agreement to arbitrate *some* set of claims[;]" and (2) "whether that agreement actually does contain a delegation clause that requires that this claim go to arbitration for gateway rulings on threshold arbitrability issues."  *Id.* at 202 (emphasis in original).  Because Wells Fargo points to a delegation clause in the Arbitration Agreement, this second set of questions applies here.  *See Hudson*, 2017 WL 1305251 at *2 (finding that when a delegation clause is identified, the Court's analysis is limited to whether there is any agreement to arbitrate any set of claims).

---

[3] https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (accessed July 25, 2017).

[4] https://www.adr.org/sites/default/files/Consumer%20Rules.pdf (accessed July 25, 2017).

**1.      Wells Fargo and Byrd agreed to arbitrate.**

State contract law governs whether the parties formed a valid agreement to arbitrate. *Kubala*, 830 F.3d at 201 (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)). Under Mississippi law, "[a] valid contract must have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Rotenberry v. Hooker*, 864 So. 2d 266, 20 (Miss. 2003) (citing *Lanier v. State*, 35 So. 2d 799, 802 (Miss. 1991)).[5]  Byrd's Arbitration Agreement satisfies each element.

The agreement to arbitrate is between two or more parties – Gwendolyn Byrd and Wells Fargo. It is supported by the consideration of mutual promises to arbitrate, as well as Wells Fargo's extension of credit to Byrd. *See McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So. 2d 446, 452 (Miss. 2004) (holding that mutual promises constitute sufficient consideration even if perfect mutuality of obligation was absent in arbitration agreement). The Arbitration Agreement is in writing, and its terms are clear, unambiguous, and definite. *See Leach v. Tingle*, 586 So. 2d 799, 802 (Miss. 1991) (holding that a contract is sufficiently definite "if it contains matter which will enable the court under proper rules of construction to ascertain its terms.") (citing *Duke v. Whatley*, 580 So. 2d 1267, 1272-74 (Miss. 1991)). Byrd is a legally competent adult, with the capacity to bring suit and the capacity to contract. Her signature on Wells Fargo's form is evidence of her assent to its terms. *See Slater-Moore v. Goeldner*, 113 So. 3d 521, 526 (Miss. 2013) (finding mutual assent where defendant drafted a contract and plaintiff

---

[5] The Arbitration Agreement states that it is "governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that act is inapplicable, unenforceable or invalid, the laws of the State of Nevada." Ex. B at 2. However, when contract formation is at issue, the Court applies Mississippi law, rather than the parties' choice of law. *Robertson v. J.C. Penney Co.*, 484 F.Supp.2d 561, 567 n.6 (S.D. Miss. 2007).

signed the contract). Finally, "Mississippi follows the federal policy favoring arbitration" and has no prohibitions on arbitrating consumer credit agreements. *Citibank, N.A. v. Stovall*, 211 So. 3d 700, 701 (Miss. 2016). In short, Byrd and Wells Fargo formed a valid contract to arbitrate.

Moreover, in *Hudson*, this Court considered the same arbitration agreement between Wells Fargo and other plaintiffs – the Hudsons – who financed a similar window purchase. *Hudson*, 2017 WL 130251 at *1. District Judge Daniel P. *Jordan*, III, found that the arbitration agreement was valid and enforceable under Mississippi law. *Id.* at *1-3.

"The party resisting arbitration has the burden of demonstrating why arbitration is not appropriate." *Anderson v. Virginia Coll., LLC*, No. 3:12CV503TSL-MTP, 2012 WL 4052198, at *2 (S.D. Miss. Sept. 13, 2012) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 81 (2000)). In her complaint, Byrd states that she "never signed, nor consented in any way, to any Wells Fargo Visa Credit Card Application." [1] at 11. Byrd goes on to allege that "[i]f such a document is produced in this litigation that purports to include Ms. Byrd's signature, then that documents [*sic*] is either a forgery or is the product of specific fraud in-the-factum about the nature of the document, itself . . . given the fact that Ms. Byrd has been blind nearly her entire life." *Id.*

However, "it is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it." *McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 455 (Miss. 2004) (internal quotation marks and citations omitted); *see also Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 (Miss. 2002) ("[A] person is charged with knowing the contents of any document that he executes.") (citation omitted); *Norwest Financial Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1194 (Miss. 2005) ("[C]onsumers who sign contracts are charged with knowledge of the documents they execute."). The Supreme

Court of Mississippi has held that "A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him." *J.R. Watkins Co. v. Runnels*, 252 Miss. 87, 96, 172 So. 2d 567, 571 (1965). "Further, where one has a duty to read a contract before signing it, he will not 'be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.'" *Southern Healthcare Servs., Inc., v. Lloyd's of London*, 110 So. 3d 735, 746 (Miss. 2013) (quoting *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.*, 584 So. 2d 1254, 1257 (Miss. 1991)).

In *American General Financial Services v. Griffin*, 327 F.Supp.2d 678 (N.D. Miss. 2004), the United States District Court for the Northern District of Mississippi considered whether a blind person, who signed a contract that included an arbitration agreement, was bound by the terms of the arbitration agreement. Griffin argued that his inability to read due to blindness and the other party's failure to provide explanation of the arbitration agreement rendered the agreement invalid. *Id.* at 682. The court, however, rejected that argument, finding that Griffin's "impairment is akin to illiteracy and does not displace his affirmative duty to read the contract 'or have it read to him.'" *Id.* at 683 (quoting *Runnels*, 172 So. 2d at 571). The court held that the parties entered into "a valid agreement to arbitrate and [Griffin's] inability to read is no defense to formation." *Id.*

If Byrd contends that Wells Fargo or another defendant failed to disclose the terms of the Arbitration Agreement before she executed it, that argument is likewise without merit. "Duties to disclose or to act affirmatively, such as explaining the terms of a contract, do not arise in arms' length transactions under an ordinary standard of care. Rather, they arise only in fiduciary or confidential relationships." *MS Credit Center v. Horton*, 926 So. 2d 167, 177 (Miss. 2006). In *Horton*, although the Supreme Court of Mississippi ultimately found that the parties seeking

to compel arbitration had waived their right to do so, the Court rejected Horton's argument – that the agreement was not valid because the terms of the arbitration agreement were not explained to her – and held that the other parties "had no affirmative duty to disclose, explain, or affirmatively act on behalf of Horton. . . ." *Id.* at 177-78.

Gwendolyn Byrd signed the Credit Card Application. Ex. A at 1. By signing, Byrd acknowledged the existence of the Arbitration Agreement and specifically agreed to be bound by its terms. Under Mississippi law, Byrd cannot avoid the contract by arguing that she did not read it or have it read to her. The Arbitration Agreement is valid, and both Byrd and Wells Fargo are bound by its terms.

**2.     The Arbitration Agreement contains a delegation clause.**

The Arbitration Agreement contains two delegations of threshold issues of arbitrability to the arbitrator. First, it states that the parties agree to arbitrate "any disagreements about the meaning or application of this Arbitration Agreement." Ex B at 2. Second, it incorporates the Rules of the American Arbitration Association ("AAA"), which state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

As noted by Judge Jordan in *Hudson*, "if there is a valid arbitration agreement, then the delegation provision, coupled with the incorporation of the AAA Rules, 'present [] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'" *Hudson*, 2017 WL 130251 at *2 (quoting *Petrofac, Inc., v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)). Accordingly, under *Kubala* and *First Options of Chi., Inc. v. Kaplan*,

514 U.S. 938, 943 (1995), and just as Judge Jordan found in *Hudson*, the Court's analysis ends at this step, and the motion to compel arbitration must be granted.

B.    **The Court should dismiss all claims against Wells Fargo under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3).**

The Fifth Circuit has repeatedly held that dismissal is appropriate when there is an enforceable arbitration agreement. *Murchison Capital Partners, L.P. v. Nuance Communications, Inc.*, 625 F. App'x 617, 627 (5th Cir. 2015); *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010).[6] "'[M]any courts have taken the view that if a district court determines that the parties are bound by an arbitration agreement, the district court no longer has the authority to resolves arbitrable claims. These courts consider such a determination to be jurisdictional in nature and therefore find that Rule 12(b)(1) is an appropriate vehicle to bring a motion to compel arbitration and dismiss the action.'" Wright & Miller, 5B FED. PRAC. & PROC. CIV. § 1350 (3d ed.) (quoting *Johnson v. Orkin, LLC*, 928 F.Supp.2d 989, 998 (N.D. Ill. 2013) (citing *Onmi Pinnacle, LLC v. ECC Operating Services, Inc.*, 255 F.App'x 24, 25 (5th Cir. 2007))). Because Byrd is bound by her Arbitration Agreement with Wells Fargo, the Court should dismiss all claims against Wells Fargo. In the alternative, the Court should stay all claims against Wells Fargo under 9 U.S.C. § 3 pending arbitration.

## CONCLUSION

As shown herein, Byrd signed an acknowledgement that she is bound by the Arbitration Agreement, and the Arbitration Agreement delegates questions of arbitrability to the arbitrator. As the Fifth Circuit held in *Kubala* and as this Court found in *Hudson*, the claims against Wells Fargo should be sent to arbitration.

---

[6] The Fifth Circuit, however, has not definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for such motions to dismiss. *Noble Drilling*, 620 F.3d at 472 n.3 (dismissing case due to arbitration clause but declining to hold which rule applies).

Respectfully submitted, this the 27th day of July, 2017.

          WELLS FARGO FINANCIAL NATIONAL BANK

          By Its Attorneys
          JONES WALKER LLP

          */s/ Kaytie M. Pickett*
          Kaytie M. Pickett

Adam Stone (MSB No. 10412)
Kaytie M. Pickett (MSB No. 103202)
JONES WALKER LLP
190 E. Capitol St., Ste. 800 (39201)
P.O. Box 427
Jackson, MS 39205-0427
Telephone: (601)949-4900
Facsimile: (601)949-4804
astone@joneswalker.com
kpickett@joneswalker.com

**CERTIFICATE OF SERVICE**

      I hereby certify that I have this day filed the foregoing document via the Court's electronic filing system which sent notification of such filing to the following:

Macy D. Hanson – MS Bar # 104197
The Law Office of Macy D. Hanson, PLLC
102 First Choice Drive
Madison, MS  39110
macy@macyhanson.com

DATED:  July 27, 2017.

                                       */s/ Kaytie M. Pickett*
                                       KAYTIE M. PICKETT