# Column  Here's why Wells Fargo forces its customers into arbitration: It wins most of the time



Wells Fargo CEO Timothy Sloan: Still trying to "make things right" for customers after the bank's scandal. (Richard Drew / Associated Press)

  By **Michael Hiltzik**

APRIL 7, 2017, 3:10 PM

**T**he insistence by Wells Fargo that the victims of its bogus account-opening scandal seek redress via arbitration, rather than in court, remains the best indication that the bank's promise to "make things right" for those customers is fake.

We've pointed out before that big companies like Wells Fargo love to force customers into arbitration because the companies are heavily favored in the process. They're repeat players, so they have familiarity with the system. They can stick customers with half the cost of arbitration, even if the customers win, increasing the customers' risk. And they can bar customers from filing class actions, which for a corporation is a big plus.

Case 3:17-cv-00522-WHB-JCG   Document 13-3   Filed 08/10/17   Page 2 of 11

A new study shows just how advantageous arbitration has been for Wells Fargo. Short answer: For the bank, it's been *great*.

## "
# The Wells Fargo situation illustrates exactly what is wrong with contemporary arbitration law.

— David Horton, UC Davis School of Law

The study comes from Level Playing Field, an Arizona nonprofit that maintains a database of arbitration awards. The group mined records of 215 cases filed against Wells Fargo in 2009-2016 for its report. Its core finding is that of 48 consumer-initiated arbitration cases that resulted in a financial award, consumers won a documented victory in only seven, collecting a total of $349,549. The bank prevailed in 13 cases, collecting $485,208. Records for the other 28 cases don't identify a winner, but in those cases Wells Fargo was awarded $519,458 by the arbitrators, while the consumers received only $82,527.

Those figures reflect the "improbable chance that consumers will be compensated wholly or at all" in arbitration, says Matthew Waldron of UC's Hastings School of Law, who has analyzed statistics of arbitration cases involving Wells Fargo and other banks. The Level Playing Field report notes that plaintiffs prevail in more than 60% in state court contract cases that go to trial, but won only 35% in the Wells Fargo cases — seven out of 20 — in which the victor was identified in the arbitration record. Wells Fargo declined to comment on the report.

The Level Playing Field database implies that arbitration cases against Wells Fargo surged in 2015 and 2016. That's especially true in California, where 58 cases were closed in those two years, compared to 33 over the previous six years. That may reflect spreading awareness of the account-opening scandal, which was first exposed by The Times in 2013.

Arbitration statistics have their limitations, but those just explain further why forced arbitration tends to be anti-consumer. Unlike lawsuits, the cases aren't public, so they yield almost no information about the nature of the customer complaints or their magnitude. It's possible, for example, that banks settle cases they believe will go against them, and pursue to the end only cases they feel they're likely to win. Of the 215 cases in the report database, 119 were settled before they reached an arbitrator, 25 were withdrawn by the plaintiff and 23 were dropped for other reasons. The absence of a public record may have allowed the Wells Fargo scandal to persist for years out of public view.

The results shed additional light on the bank's approach to making up for its scandal, in which retail bankers met crushing sales quotas by opening as many as 2 million bogus checking and credit card accounts in the names of bank customers. Wells Fargo settled charges from federal and state regulators last year for $185 million and thus far has refunded $3.2 million for 130,000 presumably fake accounts. That averages out to $24.61 per account, so you're welcome to judge whether it's enough to "make things right."

Case 3:17-cv-00522-WHB-JCG   Document 13-3   Filed 08/10/17   Page 3 of 11

Wells Fargo says it's still working to figure out "the best way" to compensate customers whose credit standing may have been harmed by the fake accounts. But so far, its PR efforts seem to have made much more progress. Just this week, the bank placed full-page ads in about 30 newspapers nationwide crowing about its "progress." The ads said that Wells has "strengthened our ethics ... and we've demanded greater accountability from ourselves."

That's nice to know, but it's window dressing as long as many of the people who were in positions of responsibility during the scandal period, which may have lasted from 2009 through 2015 or longer, remain in office. That includes 12 of the bank's 15 current board members, including Chairman Stephen Sanger.

Indeed, as my colleague James Rufus Koren reports, the influential shareholder advisory firm Institutional Shareholder Services recommended Friday that those directors, some of whom have been collecting dust around the board table since the 1990s, all be voted off the board at the bank's annual meeting on April 25. We would advocate dumping them all and going even further, barring them from serving any public company as a director or officer ever again. If "demanding greater accountability" means anything, the company should claw back the more than $20 million they collected during the scandal era, too; plainly they didn't earn the money.

Wells Fargo's policy of forcing aggrieved customers into arbitration has benefited the bank in other ways, beyond reducing its risk of payouts.

"The Wells Fargo situation illustrates exactly what is wrong with contemporary arbitration law," says David Horton, an arbitration expert at UC Davis law school. Arbitration clauses typically are buried within account agreements, where customers' eyes skate over them. The Wells Fargo clause covers not only the specific accounts being opened, but almost any disputes with the bank, even those involving "broken promises ... or other wrongful actions."

Especially egregious, Horton says, are clauses in the Wells Fargo agreement and others that forbid customers to file class-action lawsuits or to band together with other customers in class actions in arbitration.

"There's no question that requiring customers to pursue their claims individually means that fewer claims are brought," Horton says, "and companies like Wells Fargo aren't deterred from violating the law."

**Keep up to date with Michael Hiltzik. Follow @hiltzikm on Twitter, see his Facebook page, or email michael.hiltzik@latimes.com.**

**Return to Michael Hiltzik's blog.**

---

**UPDATES:**

9:08 a.m., April 8: This post has been updated to clarify that Wells Fargo's $3.2 million in refunds covered 130,000 accounts, not customers. The bank has not disclosed the number of customers affected.

Copyright © 2017, Los Angeles Times

Case 3:17-cv-00522-WHB-JCG   Document 13-3   Filed 08/10/17   Page 4 of 11

**The New York Times** | https://nyti.ms/2glqQ28

# DealB%k
WITH FOUNDER
ANDREW ROSS SORKIN

# Wells Fargo Asks Court to Force Customers to Arbitration in Fake Accounts Cases

By REUTERS   NOV. 24, 2016

Wells Fargo has asked a Federal District Court to order dozens of customers who are suing the bank over the opening of unauthorized accounts to resolve their disputes in private arbitrations instead of court, according to legal documents.

The motion, filed in the United States District Court in Utah on Wednesday, is in response to the first-class action lawsuit filed against Wells since it agreed to pay $185 million in penalties and $5 million to customers for opening up to 2 million deposit and credit-card accounts in their names without their permission.

The scandal has shaken Wells, the third-largest American bank by assets. It has been put under tougher regulatory scrutiny, its chief executive, John Stumpf, has stepped down and its reputation has been damaged as it faces multiple inquiries.

Wells Fargo has begun an advertising campaign to win back customer loyalty in the wake of the scandal.

9

In a written response to questions from lawmakers, published last week, the bank said it would stand by its arbitration policy but is offering free mediation services to affected customers.

Mandatory arbitration rules inserted into account-opening agreements prohibit customers from joining class actions or suing Wells Fargo. Instead, the agreements require individual, closed-door arbitration.

Mandating arbitration when signing up for financial products has become standard practice after a Supreme Court decision in 2011 validated the practice. But customer advocates say it improperly denies customers the legal protections of court proceedings, such as the right to appeal, and helps to conceal corporate misconduct from the public and regulators because the related documents and hearings are not made public.

Customers trying to recover small sums of money are also unlikely to find lawyers to represent them in arbitration, critics say, and the cases do not set a legal precedent to help other affected individuals.

Last year, a court dismissed an earlier lawsuit against Wells Fargo, saying that customers had signed arbitration clauses when opening their accounts.

The bank has been criticized for its mandatory arbitration clauses from Democratic lawmakers in Congress, including Senator Elizabeth Warren of Massachusetts.

The Consumer Financial Protection Bureau is considering rules to prohibit banks, credit-card issuers and other companies from forcing customers to submit to arbitration and waive their right to join class-action lawsuits. But the bureau could find its powers scaled back by President-elect Donald J. Trump and a Republican-led Congress, according to members of both political parties, lobbyists and lawyers.

A version of this article appears in print on November 25, 2016, on Page B5 of the New York edition with the headline: Wells Fargo Asks Federal Court to Force Customers to Arbitration in Fake Accounts Cases.

© 2017 The New York Times Company

Case 3:17-cv-00522-WHB-JCG   Document 13-3   Filed 08/10/17   Page 6 of 11

The New York Times  |  https://nyti.ms/2hcAaWF

# DealB%k

WITH FOUNDER
ANDREW ROSS SORKIN

# Wells Fargo Killing Sham Account Suits by Using Arbitration

By MICHAEL CORKERY and STACY COWLEY    DEC. 6, 2016

In congressional hearing rooms and on national television, Wells Fargo has vowed to make things right for the thousands of customers who were given sham accounts.

The bank's new chief executive, Timothy J. Sloan, in his first week on the job, said his "immediate and highest priority is to restore trust in Wells Fargo."

But in federal and state courtrooms across the country, Wells Fargo is taking a different tack.

The bank has sought to kill lawsuits that its customers have filed over the creation of as many as two million sham accounts by moving the cases into private arbitration — a secretive legal process that often favors corporations.

Lawyers for the bank's customers say the legal motions are an attempt to limit the bank's accountability for the widespread fraud and deny its customers their day in open court.

Under intense pressure to meet sales goals, Wells employees used customers' personal information to create unauthorized banking and credit card accounts in a far-reaching scandal that has rattled the San Francisco bank to its core, forcing the retirement of its longtime leader, John G. Stumpf, and enraging regulators and

8

Case 3:17-cv-00522-WHB-JCG   Document 13-3   Filed 08/10/17   Page 7 of 11

The bank's arbitration push in recent weeks is fanning those flames anew.

"It is ridiculous," said Jennifer Zeleny, who is suing Wells Fargo in federal court in Utah, along with about 80 other customers, over unauthorized accounts. "This is an issue of identity theft — my identity was used so employees could meet sales goals. This is something that needs to be litigated in a public forum."

In arbitration, consumers often find the odds are stacked against them. The arbitration clauses prevent consumers from banding together to file a lawsuit as a class, forcing them instead to hash out their disputes one by one and blunting one of most powerful tools that Americans have in challenging harmful and deceitful practices by big companies.

Strict judicial rules limiting conflicts of interest also do not apply in arbitration, enabling some companies to steer cases to friendly arbitrators, according to a 2015 investigation by The New York Times.

Arbitration is also conducted outside public view, and the decisions are nearly impossible to overturn.

Ms. Zeleny, a lawyer who lives outside Salt Lake City and opened a Wells Fargo account when she started a new law practice, said it would be impossible for her to agree to arbitrate her dispute over an account that she had never signed up for in the first place.

The bank's counterargument: The arbitration clauses included in the legitimate contracts customers signed to open bank accounts also cover disputes related to the false ones set up in their names.

Some judges have agreed with this argument, but some lawmakers and others consider it outrageous.

"Wells Fargo's customers never intended to sign away their right to fight back against fraud and deceit," said Senator Sherrod Brown, an Ohio Democrat, who introduced a bill last week that would prevent Wells from forcing arbitration in the sham account cases.

Case 3:17-cv-00522-WHB-JCG Document 13-3 Filed 08/10/17 Page 8 of 11

Yet even as the bank reels in the court of public opinion, Wells Fargo has been winning its legal battles to kill off lawsuits. Judges have ruled that Wells Fargo customers must go to arbitration over the fraudulent accounts.

In dismissing one large case seeking class-action status in California, a federal judge ruled last year that it was not "wholly groundless" that customers could be forced to arbitrate over accounts they had never agreed to. That case is now being settled, according to legal filings.

In a statement, Wells Fargo said it was working with customers to reimburse any improper fees. If the issues are still not resolved, the bank offers free mediation services. Arbitration, the bank said, is a "last resort."

"We want to make sure that no Wells Fargo customer loses a single penny because of these issues," the statement said.

Although the extent of the scandal became known only in September, some fraudulent acts may have started a decade or more ago.

And Wells Fargo has been moving disputes about unauthorized accounts into arbitration for years, which lawyers say may have helped keep the problems from bursting into public view sooner.

In 2013, David E. Douglas, a Wells Fargo customer in Los Angeles, filed a lawsuit claiming that several bank employees had forged his signature and opened many sham accounts in his name to meet sales quotas. The actions he described in his complaint are precisely the kinds of illegal acts the company acknowledged this year, when it paid $185 million to settle cases brought by federal regulators and the Los Angeles city attorney.

But Mr. Douglas's testimony never reached a courtroom. A judge granted Wells Fargo's request to move the case to arbitration, whisking it out of public view.

Wells Fargo's legal success shows the overwhelming power that arbitration clauses have in shaping disputes between everyday Americans and huge corporations.

Case 3:17-cv-00522-WHB-JCG   Document 13-3   Filed 08/10/17   Page 9 of 11

Since a pair of Supreme Court rulings in 2011 and 2013 allowed for the widespread use of arbitration, companies have had great success enforcing these clauses.

Proponents of arbitration say the process is a more efficient way to settle disputes than class-action lawsuits that end up mostly enriching plaintiffs' lawyers.

"By resolving legal disputes through arbitration, both the consumer and the business have the ability to reach a positive resolution at a lower cost," Wells Fargo said in its statement.

Arbitrators are typically lawyers or retired judges who are paid large fees to conduct hearings. The arbitrators, critics say, have an economic interest in siding with the companies, which bring them multiple cases, while individual consumers are likely to appear before them only once.

At the moment, regulators can do little to prevent a bank customer from being forced into arbitration.

Most Americans never bother to take their disputes to arbitration, particularly for a dispute over a small amount of money, the Times investigation showed.

And that is likely to be the case for many of the Wells Fargo customers who are sent into arbitration, lawyers say.

In many instances, the fees that customers were charged on the unauthorized accounts were less than $100. Few lawyers will take up individual arbitration claims when the potential damages are low.

"This is meant to have a chilling effect," said Zane Christensen, a lawyer who represented customers in a suit against Wells Fargo in federal court in Utah. "They know customers will have a hard time finding a lawyer to represent them in arbitration."

But those damages could cost the bank a fortune if multiplied over potentially thousands of customers in a class-action lawsuit.

Case 3:17-cv-00522-WHB-JCG   Document 13-3   Filed 08/10/17   Page 10 of 11

This is not the first time Wells Fargo has been accused of trying to use arbitration to its advantage.

In June 2009, Wells was one of about 30 banks that were sued over overdraft policies designed to maximize the fees charged to customers. Wells first decided to fight the lawsuit in Federal District Court in Miami. Typically, once a bank decides to litigate a case in court, it gives up its right to go to arbitration.

But after more than a year in court, Wells argued that it still had the right to arbitrate the overdraft dispute.

The vast majority of the banks have resolved their parts of the overdraft case, agreeing to pay, in total, more than $1.2 billion to affected customers. Wells, meanwhile, has filed several appeals.

"Wells Fargo keeps trying to push this down the road," said Robert Gilbert, a Miami lawyer representing bank customers in the overdraft case.

Members of the Senate Banking Committee sent Wells Fargo a list of detailed questions about its arbitration history over the last nine years, including how many cases were decided in the bank's favor. The company did not provide any specifics in its response.

In the wake of the scandal, under heavy pressure from lawmakers, the bank made changes that included formally separating its chairman and chief executive roles. (Mr. Stumpf had held both.)

On Thursday, the bank's board formally approved the separation of these roles — and simultaneously gave a huge raise to the new chairman, Stephen W. Sanger, who was named to the role in October. Mr. Sanger, a Wells Fargo board member since 2003 and a former head of General Mills, will see his annual retainer bumped to $250,000 from $60,000.

Ana Bárbara, a Mexican music star who lives in Los Angeles, sued Wells Fargo in June, saying a bank employee had created sham accounts and credit lines in her name and taken out more than $400,000 of her money. To cover his tracks, the

employee regularly stopped by Ms. Bárbara's house and stole Wells Fargo statements from her mailbox, according to her lawsuit.

Devin McRae, Ms. Bárbara's lawyer, said he would have preferred to try the case in court, where it would generate a trail of public records. But the case was moved into arbitration in September.

"I think it's a major problem when you have a bank that is so large, doing the things that Wells Fargo did on a systematic basis, to be able to keep that under wraps," Mr. McRae said.

A version of this article appears in print on December 7, 2016, on Page A1 of the New York edition with the headline: Wells Fargo Moves to Smother Lawsuits Over Sham Accounts.

© 2017 The New York Times Company